**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dana Jo Buona,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-17-00176-TUC-BPV<br><br>**ORDER** |

Plaintiff Dana Jo Buona filed the instant action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of Social Security. The Magistrate Judge has jurisdiction over this matter pursuant to the parties consent under 28 U.S.C. § 636(c). (Doc. 11). The matter is now fully briefed before this Court (Docs. 14, 18, 21). For the following reasons, the Court vacates the Commissioner's decision and remands for consideration in accordance with this Order.

## I. PROCEDURAL HISTORY

On February 1, 2013, Plaintiff filed an application for Social Security Disability Insurance Benefits, and on February 22, 2013 filed an application for Supplemental Security Insurance Benefits. (Administrative Record ("AR") 230-33, 238-43). Plaintiff alleged disability as of June 1, 2012 (AR 230, 238) due to: sciatica, fibromyalgia, chronic pain syndrome, back injury, chronic interstitial cystitis, irritable bowel constipation, chronic fatigue syndrome, sleep apnea, depression, cervical discitis, and chronic migraines. (AR 257). Plaintiff's application was initially denied on May 24, 2013 (AR

110, 159), and upon reconsideration on November 27, 2013 (AR 171). On May 19, 2015, Plaintiff appeared with counsel and testified at an administrative hearing in front of an Administrative Law Judge ("ALJ"). (AR 48). The ALJ issued an unfavorable decision on August 26, 2015. (AR 16-47). Following Plaintiff's Request for Review (AR 14), on March 6, 2017, the Appeals Counsel denied Plaintiff's request (AR 1) making the ALJ's decision the Commissioner's final decision for the purposes of judicial review.

Plaintiff filed the instant action on April 20, 2017, arguing that the ALJ erred because she: (1) failed to provide clear and convincing reasons for discrediting Plaintiff's testimony, (2) did not give germane reasons for not considering reports by third-party lay persons, (3) erroneously excluded consulting physician Fred Wiggins' opinion that Plaintiff's physical ailments would cause missed work, and (4) improperly determined that other work existed for Plaintiff in the national economy. (Doc. 1). Because the Court finds that the ALJ erred when evaluating Plaintiff and third-party's testimony, and this error was not harmless to the determination of disability, it does not reach Plaintiff's other arguments.

## II. PLAINTIFF'S BACKGROUND, STATEMENTS IN THE RECORD, AND VOCATIONAL EXPERT'S FINDINGS

Plaintiff was 38 years old on the date of the alleged onset of disability. (Doc. 18 at 2). She completed high school and one semester at a junior college. (AR 52).

Plaintiff testified at the administrative hearing that from approximately 2000-2007 she worked part-time for a business owned by her ex-husband. (AR 53). Plaintiff answered phones, created invoices, input data into a computer, and scheduled appointments. (AR 53-54). She worked from home between two to four hours a day, half sitting and half walking or standing. (AR 54). Petitioner left this job when she left her ex-husband. (AR 55).

From 2008-2011, Petitioner stated that she worked at a relative's law firm as a receptionist answering phones and obtaining information from clients. (AR 55-56). At work she spent one-third of her workday standing, one-third walking, and one-third

sitting. (AR 57). Petitioner was scheduled to work 5 days a week for 35 hours, but often missed work due to migraines. (AR 57). On the days she did not feel well, Plaintiff had the option to lie down on a futon at the office. (AR 58). Petitioner lost this job because she frequently missed work and committed clerical errors. (AR 57).

Last, Petitioner worked as a teacher's aide at a charter school run by another family member from August 2011 to June 2012. (AR 58-59). At this job, she helped second grade students with math five days a week for a total of 27 hours. (AR 59). She was able to sit, stand, and walk as needed. (AR 59). She discontinued this work because the school year had ended and she was scheduled for a spinal fusion. (AR 60).

The Vocational Expert ("VE") testified that Plaintiff's prior work included teacher's aide, clerical receptionist, and administrative clerk. (AR 80). The ALJ asked the VE what work was possible for an individual limited to light work at a non-production pace; occasional climbing, stairs, stooping, kneeling, crouching, crawling, and overhead reaching bilaterally; with no exposure to extreme cold, vibration, or unprotected heights the VE determined that an individual could not perform Plaintiff's past work, but could still perform the work of mail clerk, storage facility rental clerk, charge clerk, food and beverage order clerk, and telemarketer. (AR 83-84). However, the VE added that if the hypothetical individual also needed to miss two or three days of work per month "it would preclude all jobs." (AR 85-88).

III. **SUMMARY OF ALJ'S FINDINGS**

Whether a claimant is disabled is determined pursuant to a five-step sequential process. *See* 20 C.F.R. §§ 404.1520, 416.920. To establish disability, the claimant must show: (1) she has not performed substantial gainful activity since the alleged disability onset date ("step one"); (2) she has a severe impairment(s) ("step two"); and (3) her impairment(s) meets or equals the listed impairment(s) ("step three"). *Id.* "If the claimant satisfies these three steps, then the claimant is disabled and entitled to benefits. If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed[,] . . . the ALJ then proceeds to step four, which requires the ALJ to determine the claimant's residual functioning capacity (RFC)." *Dominguez v. Colvin*, 808

F.3d 403, 405 (9th Cir. 2015). At this step, the ALJ considers (a) whether there is an impairment that would reasonably be expected to cause the claimant's symptoms, and (b) the severity of claimant's ailments, including intensity, persistence, and limiting effects of alleged symptoms. SSR 96-7p. If the claims of intensity, persistence and limiting effects are not supported by the evidence, the ALJ needs to determine, based on the record, whether plaintiff's claims are credible. *Id.* Then, at step five, "[a]fter developing the RFC, the ALJ must determine whether the claimant can perform past relevant work." *Dominguez*, 808 F.3d at 405. At this stage, "the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience." *Id.*; 20 C.F.R. §§ 404.1520, 416.920.

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2012. (AR 23).

At step two, the ALJ determined that Plaintiff had severe impairments, including "degenerative disc disease of cervical spine variously diagnosed as cervical radiculopathy, post-laminectomy syndrome in the cervical region, cervical spondylosis, cervicalgia, cervical spinal stenosis, and cervical spondylosis with facet syndrome, status post cervical discectomy and fusion at C6-C7; lumbar degenerative disc disease variously diagnosed as thoracic/lumbosacral neuritis/radiculitis, lumbosacral spondylosis without myelopathy, lumbar radiculopathy, lumbar facet syndrome; labral tear and trochanteric bursitis of the left hip; chronic pain syndrome; and affective and anxiety disorders." (AR 23).

But the ALJ decided, at step three, that the Plaintiff's impairments did not meet or equal the listed impairments, either singularly or in combination. (AR 23-24).

The ALJ found that while Plaintiff's impairments could cause the purported symptoms, the evidence did not support Plaintiff's claims of the limiting effects of these impairments. (AR 31-32). She further found that Plaintiff's subjective claims of the intensity, frequency, and limiting effects of her impairments were not credible. (AR 31).

The ALJ found that given the limiting effects of her ailments, Plaintiff's RFC included performing simple, unskilled, light work at below a production pace. (AR 26, 31). The RFC included occasional walking of stairs and ramps, as well as stooping, kneeling, crouching, crawling, and reaching overhead. (AR 26) However, the RFC provided that Plaintiff should not be exposed to "extreme cold, vibrations, and hazards." (AR 26).

At step five, the ALJ concluded that Plaintiff was not disabled; and given Plaintiff's RFC, age, education, and work experience she could not perform past relevant work, but could perform the occupations of office helper, mail clerk, storage facility rental clerk, food and beverage order clerk, and telemarketer. (AR 37-40).

**IV.　STANDARD OF REVIEW**

The Court has the "power to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The factual findings of the Commissioner shall be conclusive so long as the findings are based upon substantial evidence and there is no legal error. 42 U.S.C.§§ 405(g), 1383(c)(3); *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance,'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)). Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). Moreover, the Commissioner, not the Court, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence, and determine the case accordingly. *Matney*, 981 F.2d at 1019.

However, the Commissioner's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence. . . . Rather, the Court must consider the record

as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Id.* (internal citations and quotations omitted).

## V. DISCUSSION

### a. The ALJ Failed to Provide Clear and Convincing Reasons for Discrediting Plaintiff's Testimony.

#### i. *Plaintiff's Subjective Impairments*

In the administrative hearing, Plaintiff stated she had constant headaches with debilitating migraines approximately 1-2 times per week. (AR 64). Plaintiff contended that these headaches frequently caused vomiting and light sensitivity. (AR 64). Plaintiff stated that a failed cervical fusion caused her head to tilt forward and down creating tension. (AR 61-62). She also claimed that she suffered from radiating pain down her left arm, and pseudoarthrosis in the cervical spine. (AR 60-61). Furthermore, her upper body symptoms were aggravated by her fibromyalgia, which resulted in muscle spasms and tension. (AR 64, 784). Plaintiff also purported that she has been unable to shower because of her neck and shoulder pain. (AR 73).

Plaintiff also contended the fibromyalgia also caused pain and muscle spasms in her low back and hips. (AR 64-65). She said she suffered from edema, labral tears, piriformis syndrome, and bursitis in her hips. (AR 64-65).

Furthermore, Plaintiff complained of gastrointestinal pain which began after four abdominal surgeries. (AR 66). This resulted in an inability to control her bowel movements, causing explosive diarrhea, or in the alternate, constipation. (AR 67-69). At times, the diarrhea would force her to spend up to three hours in the bathroom with severe cramping. (AR 67-69). At other times, constipation prevented her from defecating for several days in a row. (AR 67-69). No matter what, Plaintiff claims she is constantly nauseous. (AR 67).

Finally, Plaintiff testified that she had sleep apnea and took various medications that affected her sleep habits. (AR 69-70). Because of this, she was often tired during the day and needed to take naps. (AR 72).

In combination, she claimed these impairments caused her to spend several days a week at home in pain. (AR 77). When asked how many days a week she thought she would miss of work due to the various impairments, Plaintiff responded, "Two or three." (AR 77).

### ii. ALJ's Credibility Assessment

The ALJ stated that the medical evidence supported Plaintiff's claims that she suffered from "chronic interstitial cystitis, chronic migraines, constant headaches, irritable bowel constipation, chronic fatigue syndrome, sleep apnea, gastric paresis, paralytic ileus, and explosive diarrhea and leakage due to medication." (AR 32). The ALJ also said the evidence supported "a finding of fibromyalgia, degenerative disc disease of the cervical and lumbar spine, a labral tear and trochanteric bursitis in the left hip, and chronic pain syndrome." (AR 27). She conceded that Plaintiff was treated during the pendency of disability for pain associated with the fibromyalgia, low back, and neck pain with potent medications such as codeine, fentanyl, and oxycodone. (AR 27). Also, since Plaintiff's anterior discectomy and fusion, she saw a neurosurgeon for "persistent neck pain associated with headaches and reported radiation into the left upper extremity." (AR 27). The ALJ's RFC even limited Plaintiff to occasional overhead reaching "given evidence of pain and limited range of motion in the shoulders" and found that the cold could irritate Plaintiff's chronic pain. *Id.*

Despite the ALJ's admission that the record supported functional limitations in the spine and hips, the ALJ found that it did not support the level of severity for which Plaintiff complained, and found her testimony was not credible. (AR 29-31, 34). The ALJ stated that Plaintiff's activity and medical records belied her complaints, and the ALJ did not believe that the impairments "significantly interfered with the ability to perform basic work related activities." (AR 77).

The Court finds that the ALJ has not supported her credibility determination with clear and convincing reasons or substantial evidence from the record. Moreover, the ALJ's stated reasons for questioning credibility do not establish that Plaintiff is capable of engaging in sustained work as stated in the RFC.

### iii. Legal Standard

To determine that a claimant's subjective symptoms are not credible, the ALJ must evaluate: (1) the daily activities of the individual; (2) "the location, duration, frequency, and intensity of the individual's pain or other symptoms;" (3) what aggravates or causes symptoms; (4) the medications used to control pain; and (5) other treatment, techniques, and relevant factors claimant employs to relieve pain. SSR 96-7p. To reject a claimant's testimony about subjective pain, the ALJ must provide "specific, clear, and convincing reasons that are supported by substantial evidence." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

### iv. Plaintiff's Daily Activities

The ALJ believed that Plaintiff's actual activity level contradicted her purported ability to function. (AR 31). The ALJ listed certain events that she claimed were contradictory to the alleged severity of impairments: (1) Plaintiff went camping and vacationed during Spring Break, (2) she prepared two holiday meals, (3) she drove her daughter to school; (4) she was able take herself to frequent medical appointments, (5) and she shopped for groceries. (AR 31). Finally, the ALJ noted Plaintiff could participate in exercise, which suggested the exercise regimen undermined her alleged limitations. (AR 29). The ALJ found that these activities were "inconsistent with an alleged inability to sit, stand, and walk for no more than 15 to 30 minutes at a time, as well as with debilitating migraine headaches two to three times a week and uncontrollable diarrhea with severe cramping as often as two times a week." (AR 32). In the administrative hearing, the ALJ did not ask any clarifying questions about the details of these activities.

"[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (home activities do not necessarily

transfer to the workplace)); *see Reddick v. Chater,* 157 F.3d 715, 724 (9th Cir. 1998) (housework, trips, and exercise do not preclude disability); *see also Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (claimant may assist with household chores and still be disabled). However, if an ALJ shows that a claimant "'is able to spend a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" *Vertigan*, 260 F.3d at 1049 (citing *Morgan v. Comm'r Soc. Sec.,* 169 F.3d 595, 600 (9th Cir. 1998)) (emphasis in original).

However, Plaintiff provided several written statements describing how her activities were limited. Plaintiff stated that she only prepared a part of the holiday meals (e.g. deviled eggs), received help with grocery shopping and transportation when her pain was severe, and required special accommodations and assistance from her family on trips. (AR 265-272, 313-323, 373-377). In addition, Plaintiff's testimony and the medical evidence indicated that although she did take her child to school, she immediately returned home to rest and was able to do little else throughout the day. (AR 72, 793, 811).

A reasonable mind would not conclude that the activities mentioned by the ALJ conflicted with Plaintiff's claims of constant pain and an intermittent inability to participate in daily activities. The meals were simple, infrequent, and for special occasions. Plaintiff reasonably strived to participate in Thanksgiving and Christmas for the benefit of her child. In addition, Plaintiff's driving was limited in both time and frequency. Plaintiff provided evidence that the driving often required assistance. Furthermore, Plaintiff testified that after she takes her daughter to school, she immediately returns home to sleep. (AR 72). The ALJ did not indicate why she did not believe this to be true.

Furthermore, Plaintiff's commitment to attending her various medical appointments for pain relief is not indicative of the credibility of her subjective complaints. Her medical records show that she is attending her appointments *despite* being in intense pain during the examinations. The District of Oregon offered an apt explanation as to why Plaintiff's attendance does not weigh on her credibility. It stated,

"[T]his court suspects that had plaintiff failed to attend her various appointments, the ALJ would have criticized her for failing to comply with treatment as evidence of malingering. Her tenacity in seeking out treatment, in spite of her severe limitations, bolsters her credibility and does not contradict her physicians' serious diagnoses." *Hernandez-Devereaux v. Astrue*, 614 F. Supp. 2d 1125, 1147 (D. Or. 2009); *but see Remmers v. Colvin*, CV-14-01028-PHX-JAT, 2015 WL 6502109, at *7 (D. Ariz. Oct. 28, 2015) (failing to seek treatment may weigh on credibility). Plaintiff has been an active and reliable participant in her recovery, and this does not detract from her credibility.

Likewise, the ALJ did not provide clear and convincing reasons why Plaintiff's participation in an exercise regimen contradicted her allegations of pain. The ALJ did not explain whether it was the types of activities or the amount of time required for the exercises that she found inconsistent. Moreover, the ALJ asked no clarifying questions during the administrative hearing. However, the physical therapy records show that the therapeutic exercises during sessions lasted, at maximum, 15 minutes. (AR 1154, 1159, 1199, 1164, 1174, 1179, 1184, 1189, 1194, 1199). In addition, the physical therapist's home exercise program included simple muscle strengthening and flexibility movements for the neck and core, as well as proper postural techniques. (AR 1155-56, 1161, 1171, 1176, 1181, 1196, 1199, 1201, 1205). These records do not state how frequent or how long exercises lasted.

This evidence of exercise is not inconsistent with Plaintiff's allegation that she cannot sit or stand for more than 30 minutes without pain. There is no evidence that her exercise was more strenuous than her physical therapy sessions or of longer duration than 15 minutes.

Finally, the Court cannot find that one mention of slipping in the shower contradicts Plaintiff's testimony either. Plaintiff stated that she had not taken a shower in a long time because she could not lean her head back to wash her hair or bend to shave her legs. (AR 73). In her medical records Plaintiff stated she slipped when "getting out of the shower." (AR 1103). This could just be a description of the area of the bathroom—i.e. bath/shower area—rather than an indicator that her testimony was false. A single

ambiguous statement does not undermine Plaintiff's credibility. *See Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017).

Nonetheless, even if the Court concluded that the ALJ was correct and Plaintiff is capable of engaging in these activities and the subjective statements on impairment were not credible, the ALJ's ruling does not explain how these short activities, which often required assistance, translate into Plaintiff's ability to work a full workday 5 days a week.

### *v. Location, Duration, Frequency, and Intensity of Symptoms*

#### *1. Physician's Inability to Pinpoint Cause of Pain*

The ALJ found Plaintiff's claims incredible in part because Dr. Sipos and Dr. Cristiano could not determine the precise cause of the pain. (AR 31).

A failure to pinpoint the cause of pain is not a valid reason for discrediting a Plaintiff's subjective symptoms of pain. *Carradine v. Barnhart,* 360 F.3d 751, 754-55 (7th Cir. 2004); *Wirth v. Barnhart*, 318 F. Supp. 2d 726, 742 (E.D. Wis. 2004). Furthermore, when a claimant consistently seeks treatment, has sustained pain, complies with suggested medical treatment, and there is no finding of malingering, it weighs heavily in support of claimant's credibility. *Albertson v. Colvin*, 659 Fed. Appx. 372, 374 (9th Cir. 2016).

The ALJ erred by discrediting Plaintiff's subjective complaints based on doctor's inability to pinpoint the cause of Plaintiff's pain. Dr. Cristiano did acknowledge that Plaintiff suffered physical impairments in the neck and back, including pseudoarthrosis, a narrowing of the foramen between C6-C7, and a failed fusion in the cervical spine. (AR 1218, 1221). Dr. Cristiano stated that the reason he could not locate the exact cause of pain was because her ailments were complicated, not that they were fabricated. *Id.* It is unclear how the doctor's inability to pinpoint the cause of pain means that Plaintiff's subjective testimony is not credible. There is no suggestion throughout the medical records that Plaintiff was malingering. (*See*, e.g., AR 833 (Plaintiff was a "reliable historian")). Finally, Plaintiff consistently attended medical appointments, actively participated in her own medical treatment program, and her long-term pain was substantially supported by the evidence.

### 2. *Pain and Medication*

The ALJ discounted Plaintiff's claims that headaches and migraines prevented her from working. She reasoned that Plaintiff's migraine headaches only appear in the records sporadically and are addressed as secondary to other complaints. (AR 32). Also, she stated that Plaintiff had not undergone diagnostic testing to determine the cause of the headaches. (AR 33). Finally, there was no real change in treatment throughout the period of disability and treatment was not aggressive. (AR 32).

However, a significant portion of the evidence indicates that Plaintiff reported and sought treatment for pain associated with headaches. Although addressed in conjunction with her back, hip, fibromyalgia, and intestinal pain, the headaches and migraines are consistently included in the overall pain that Plaintiff seeks to resolve during medical visits. (AR 639, 641, 644, 647, 650-51, 653, 657, 661, 664, 666, 671, 676, 686, 690, 706, 742-783, 775-76 789, 878, 1162, 1172, 1218, 1226, 1277, 1414). Furthermore, the ALJ concedes that Plaintiff's persistent neck pain is related her headaches. (AR 27). Separating the headache and migraine pain from the neck and shoulder pain creates a distinction that was never delineated by Plaintiff's treating physicians.

Admittedly, Plaintiff did not submit to a progressive increase medication or additional surgery. However, Plaintiff was taking so many pain medications she needed to be supervised by one physician for all medications and a more aggressive medication protocol was not warranted. The opinion neglects the fact that the severity of Plaintiff's pain necessitated a large quantity of heavy-duty pain medication including, at different times: Oxycodone (328, 330-32, 386-87, 390); Codeine (328, 330-32, 379); Fentanyl (305, 330-32,387, 389); Morphine (AR 679); Diclofenac (305, 329-32, 379); Baclofen (305, 329-32, 379); Gabapentin (305, 332, 379); Percocet (306, 379, 390, 680); Lidocaine cream (306, 329, 379); Voltaren gel (306); and Flector patches (307). Medical examiners noted that Plaintiff's narcotic use was heavy and expressed concerns about long-term use. (AR 399, 684, 1090, 768). For instance, at one point, the Pain Center determined that Plaintiff was developing a tolerance to Fentanyl, but the physician was reluctant to

change her medication because a new medication may cause rebound headaches. (AR 669, 884).

Surgery was a poor option for Plaintiff as well. As recently as March 2015, Plaintiff's use of medications precluded her from surgery. (AR 768, 1090-91, 1209). In addition, Dr. Cristiano found that spinal intervention would not be successful, and Plaintiff was not "a good candidate for invasive pain management." (AR 1209, 1221). Plaintiff also consulted with Dr. John Wild about surgery, but the doctor was concerned that Plaintiff's insurance would not cover the physical therapy necessary for a successful recovery. (AR 67).

In addition surgery and medication, Plaintiff was subjected to various other treatments, with little to no affect. Plaintiff treated her pain with trigger point therapy (AR 643, 673, 772, 781), radiofrequency ablation (AR 673), Lidocaine injections (AR 674), steroid injections (AR 764), Epsom salts and hot baths (AR 73), massage (AR 743), biofeedback (AR 791, 833), physical therapy (AR 1151-1205), Kinesio-taping (1161, 1166), and dry needling (AR 1162, 1168, 1172, 1177-78). She has been an active participant in her attempted recovery.

"[A] conservative course of treatment can undermine allegations of debilitating pain, [but] such [a] fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Plaintiff presented substantial evidence that she had chronic, constant pain that limited her ability to participate in sustained activity, and gave valid reasons for not treating it more aggressively.

The ALJ pointed to limited statements that Plaintiff had full range of motion in the neck, as well as normal arm strength, but ignored other statements within these evaluations that support Plaintiff's contention how pain and neuropathy limited her functioning. (AR 641-42, 683-84, 845, 1152-56, 1345, 1389-90). This short period of time in which Plaintiff was able to move freely is not inconsistent with Plaintiff's testimony of the pain she experienced, nor the described intermittent exacerbation of her

- 13 -

symptoms. *See Reddick v. Chater,* 157 F.3d 715, 724 (9th Cir. 1998) ("[O]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." (quoting *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996))).

Even though these citations claim she is able to move her body, the ALJ does not explain how the cited medical records support her contention that Plaintiff's pain is not as bad as she alleges. But there is substantial evidence demonstrating functional limitations and the Court finds it cannot support the ALJ's determination by isolating a small quantum of evidence. Again, the ALJ does not explain how the evidence she cites demonstrates that Plaintiff can spend a substantial amount of her day in work related activities.

### *3. Insomnia*

Plaintiff testified that she could sleep approximately 1-1 ½ hours before the pain woke her. (AR 75). Because of her restless sleep, Plaintiff claimed that soon after dropping off her daughter at school, she would return to bed to nap. (AR 72). Plaintiff participated in a sleep study, which indicated she suffered from sleep apnea and her level of daytime sleepiness was significant. (AR 613, 897).

In her RFC, the ALJ granted that claimant had "some level of chronic pain, loss of sleep and the side effects of her medications—particularly narcotic medications—[which] would limit her ability to sustain concentration, persistence, and pace." (AR 35). The ALJ also explained that Plaintiff's long history of narcotic use contributed to her sleep apnea. (AR 29). But, the ALJ stated that Plaintiff's claims that insomnia limited her ability to concentrate were not credible because she was able to maintain good concentration during mental status evaluations. (AR 35).

The ALJ's reasoning did not clearly articulate how a short, limited evaluation could translate to sustained concentration throughout an entire workday. If credited, Plaintiff's need to rest for most of the day and inability to sleep at night reasonably affects Plaintiff's ability to spend a substantial part of her day engaged in work activity. The ALJ's explanation did not provide clear and convincing evidence of Plaintiff's

ability to remain wakeful throughout the day, or why her testimony that she was drowsy during the day was inconsistent.

Taken as a whole, the ALJ failed to provide clear and convincing reasons why Plaintiff's claim that her physical ailments would cause her to miss, at least, two days of work per month was not credible. The Court finds that given all of the evidence, Plaintiff's testimony was not credible. Furthermore, even if the Court found that the ALJ's conclusion that the extent of Plaintiff's claims were exaggerated, it still cannot find that this demonstrated Plaintiff was capable of the sustained work required in the ALJ's RFC.

### b. The ALJ did not give germane reasons for rejecting reports by third-party lay persons

Plaintiff submitted third-party statements from three individuals. The first was a function report filled out by Plaintiff's mother that indicated the mother needed to assist with several of Plaintiff's routine tasks, including Plaintiff's shopping and household chores. (AR 265, 267). The mother indicated that Plaintiff needs assistance so often that she has retired in order to help her daughter. (AR 268). She claimed that when Plaintiff attempted to do heavy cleaning or chores she remained in bed for days in pain. (AR 268). In addition, the mother stated that while Plaintiff can participate in daily activities on some days, the mother often needed to transport Plaintiff's daughter to school and to appointments on days Plaintiff was unable to do so because of pain or sleepless nights. (AR 265). Mother noted that at times the pain was so excruciating Plaintiff was unable to move to retrieve her pain pills. (AR 266). The mother admitted that Plaintiff was able to prepare meals; however, when her pain was intense, she required assistance from her mother or daughter because she was sometimes unable to grasp objects. (AR 267). Mother describes her daughter as a person who tries to remain positive, but has suffered from intermittent, debilitating pain, which has hampered her positivity. (AR 271).

Plaintiff's counsel also provided a separate letter from Plaintiff's mother. (AR 313). While this letter does discuss alleged medical conditions, the takeaway from the letter is that Plaintiff suffers from intermittent, debilitating pain. The mother stated that

Plaintiff tries to keep her daily life as normal as possible for the sake of Plaintiff's daughter, but she has days where the pain makes her completely immobile. (AR 315-16). The letter reinforces Plaintiff's allegation that she has difficulty raising her hands above her head, cannot carry heavy objects, has pain sitting and standing, and her bowel movements can take several hours in the morning. (AR 314-15). It also alleges that when the pain is intense, Plaintiff's attention can be limited, and she may spend the entire day unable to leave the house. (AR 315-316).

Lifelong friend Brett Watins also submitted an opinion letter. (AR 318-19). Watins' letter stated that he often helped Plaintiff with her daily tasks such as yardwork, chores, and loading her car. (AR 318). It also details one severe pain episode during the planning of Plaintiff's daughter's birthday, where Mr. Watins observed that Plaintiff had difficulty concentrating and communicating. (AR 318-19).

The final opinion is a letter from Plaintiff's sister. The letter described how a drive to Phoenix caused Plaintiff so much pain that it prevented her from enjoying a trip to the zoo with the family. Plaintiff could not keep up with the family, sat crying in pain, and had to leave the zoo after only seeing a fraction of the exhibits. (AR 321). Plaintiff's sister also stated that Plaintiff declined an invitation to her niece's high school graduation because she was worried the drive to Phoenix would have caused pain. (AR 321). The sister also expressed that when she drives to Tucson to visit Plaintiff, she never knows if she will be able to visit her sister because it may be a day Plaintiff has a migraine or severe pain. (AR 322). The letter describes how the sister observed Plaintiff's frustration with her level of functioning, as well as the despair and grief Plaintiff experienced because of how her incapacity affects her child. (AR 322-23).

The ALJ considered these statements, and afforded them some weight as far as "their observations of symptoms and functional limitations . . . are consistent with the preponderance of the evidence." (AR 36). But, the ALJ stated that the medical evidence did not support their statements. (AR 37). The ALJ also discredited their opinions because they were close to the Plaintiff and could not be considered disinterested parties.

(AR 37). Finally, the ALJ commented that since the third parties were merely lay witnesses, they could not diagnose Plaintiff's impairments. (AR 37).

"[I]n evaluating a claimant's subjective complaints of pain [or other symptoms], the adjudicator must give full consideration to all of the available evidence, medical *and other,* that reflects on the impairment and any attendant limitations of function." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (emphasis in original). "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent [other] evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Layperson testimony may be used "to show the severity of [the claimant's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. § 404.1513(d) (2015). Laypersons are capable evaluators of impairments because "friends and family members [are] in a position to observe a claimant's symptoms and daily activities [and] are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).

To discount testimony of lay witnesses, the ALJ must provide germane reasons for doing so. *Id. at* 919. The ALJ's reasons must be specifically stated. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Furthermore, the ALJ may not simply rely on the lay witnesses' close relationship to the claimant to discredit the testimony. *Lohmeier v. Colvin*, 2016 WL 825850 825850, at 14 (D. Ariz. Mar. 3, 2016); *cf., Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (family prejudice in conjunction with specific inconsistencies between layperson's statements and claimant's medical records can provide germane reasons for discrediting lay testimony). Nor may an ALJ discredit a layperson's testimony simply because the individual is not a medical practitioner and is incapable of drawing medical conclusions. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009); *see also Powers v. Comm'r of Soc. Sec. Admin.*, No. CV-16-03427-PHX-GMS, 2018 WL 1182554, at *5 (D. Ariz. Mar. 7, 2018) (discounting lay testimony based on both general inconsistency with medical records and family relationship not germane reasons).

The Court agrees with Plaintiff that the ALJ did not give germane reasons for doubting the third party testimony. The ALJ's opinion gives weight to the testimony about symptoms and functional limitations, but states the alleged severity and functional ability to work are inconsistent with the record. (AR 36-37). However, the ALJ does not connect any assertion by the lay people to contradictions in the record. The lay testimony claims that Plaintiff is intermittently debilitated by pain, which manifests in headaches, overall aching, and an inability to function. Between episodes she is pleasant and attempts to take on as much of her daily routine independently as possible. As explained previously, Plaintiff's chronic and episodic pain is not inconsistent with a substantial portion of the record. In addition, the third-parties' support is not from a medical diagnosis, but rather their observation of the frequency and intensity of Plaintiff's pain. The lay person testimony indicates that Plaintiff is attempting to normalize her child's life to the greatest extent possible; however, unexpected pain often circumvents her plans and requires assistance from family members. Furthermore, the ALJ does not explanation which third-party statements are supported by clinical and diagnostic medical evidence and which were not.

Because the Court finds the ALJ committed harmful legal error by discrediting Plaintiff's and third party testimony, the Court does not address Plaintiff's two other arguments. Plaintiff's third argument is that the ALJ committed legal error because she excluded physician Fred Wiggins' opinion that Plaintiff's physical impairments would cause missed work. The Court notes that while it does not reach this issue, if Dr. Wiggins' opinion was credited, it would further support Plaintiff's alleged intensity and effects of her impairments.

## VI. CONCLUSION

The ALJ legally erred when she discredited Plaintiff's subjective testimony that the intensity and frequency of her pain and insomnia would cause her to miss work. The ALJ further erred when evaluating the opinions of laypersons, because she failed to give germane reasons for discounting the laypersons' testimony.

Having determined that the ALJ committed legal error, the Court must consider whether the error has harmless. Harmless error occurs "when it is clear from the record the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Garcia v. Comm'r Soc. Sec.*, 768 F.3d 925, 932 (9th Cir. 2014) (internal quotation and citation omitted).

Plaintiff's subjective statements and the opinions of laypersons stated that Plaintiff was intermittently hit with excruciating pain, which would likely cause Plaintiff to miss work at least 2-3 days per week. The VE stated in the administrative hearing that missing 2-3 days *per month* would preclude Plaintiff from any jobs in the national economy. Since the ALJ erred in her credibility determination, and crediting Plaintiff's testimony would mean Plaintiff would miss at least 2-3 workdays per month, which the VE stated precludes all work in the national economy, the Court cannot find that the ALJ's error was harmless.

Accordingly, IT IS ORDERED:

1. The decision of the Commissioner denying Plaintiff's claim for benefits is REVERSED.
2. This case is remanded for consideration in accordance with this Order.

Dated this 20th day of September, 2018.

_____
Bernardo P. Velasco
United States Magistrate Judge